235 Kan. 968 (1984)
685 P.2d 874
UNIFIED SCHOOL DISTRICT No. 501, Plaintiff/Appellant,
v.
SECRETARY OF THE KANSAS DEPARTMENT OF HUMAN RESOURCES, Defendant/Appellee, and NATIONAL EDUCATION ASSOCIATION-TOPEKA, Intervenor.
No. 56,202
Supreme Court of Kansas.
Opinion filed July 13, 1984.
William G. Haynes, of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and was on the brief for the appellant.
Karl V. Cozad, of Kansas Department of Human Resources, of Topeka, argued the cause, and Ronald H. Baxter, of the same agency, was on the brief for the appellee.
David M. Schauner, of Topeka, argued the cause and was on the brief for the intervenor.
The opinion of the court was delivered by
PRAGER, J.:
This is an appeal by Unified School District No. 501, Topeka, (school board) from a judgment of the district court of Shawnee County affirming an order of the Secretary of the Kansas Department of Human Resources (secretary), finding that the school board had violated K.S.A. 72-5430(b) by refusing to negotiate certain proposals of the National Education Association-Topeka (NEA).
The present controversy arises as a result of negotiations between the school board and NEA during the 1981-82 school *969 year. NEA noticed for renegotiation all provisions contained in the current professional agreement, including, among others, three proposals entitled "Reduction in Staff," "Employee Files," and "Student Teacher Program." The specific proposals will be discussed later in the opinion. In the course of negotiations, the school board refused to negotiate eight topics proposed by NEA. As a result of the school board's failure to negotiate these topics, NEA filed a prohibited practice complaint with the secretary pursuant to K.S.A. 72-5430. The complaint, as amended, specifically charged the school board with failing to negotiate in good faith on mandatorily negotiable topics. The secretary considered each of the eight topics to determine whether it fell within the purview of mandatorily negotiable categories listed under K.S.A. 72-5413(l). The secretary determined that five of the topics were not mandatorily negotiable and that three of the topics were mandatorily negotiable. The mandatory negotiability of only the three topics was considered in district court. The primary issues presented on this appeal are concerned with whether these three proposals fell within the category of subjects which were mandatorily negotiable.
At the outset, it should be noted that both the secretary and the district court determined the question of mandatory negotiability by using the so-called topic approach. Under this approach, a proposal does not have to be specifically listed under K.S.A. 72-5413(l) to be mandatorily negotiable as a term and condition of employment. All that is required is that the subject matter of the specific proposal be within the purview of one of the categories listed under "terms and conditions of professional service." K.S.A. 72-5413(l), as amended in 1980, defines "terms and conditions of professional service" as follows:
"(l) `Terms and conditions of professional service' means (1) salaries and wages, including pay for duties under supplemental contracts; hours and amounts of work; vacation allowance, holiday, sick, extended, sabbatical, and other leave, and number of holidays; retirement; insurance benefits; wearing apparel; pay for overtime; jury duty; grievance procedure; including binding arbitration of grievances; disciplinary procedure; resignations; termination and nonrenewal of contracts; re-employment of professional employees; terms and form of the individual professional employee contract; probationary period; professional employee appraisal procedures; each of the foregoing is a term and condition of professional service, regardless of its impact on the employee or on the operation of the educational system; and (2) matters which relate to privileges to be accorded the recognized professional employees' organization, including *970 but not limited to, voluntary payroll deductions, use of school or college facilities for meetings, the dissemination of information related to the professional negotiations process and related matters to members of the bargaining unit on school or college premises through direct contact with members of the bargaining unit, the use of bulletin boards on or about the facility, and the use of the school or college mail system to the extent permitted by law, reasonable leaves of absence for members of the bargaining unit for organizational purposes such as engaging in professional negotiating and partaking of instructional programs properly related to the representation of the bargaining unit; and (3) such other matters as the parties mutually agree upon as properly related to professional service. Nothing in this act, or acts amendatory thereof or supplemental thereto, shall authorize the diminution of any right, duty or obligation of either the professional employee or the board of education which have been fixed by statute or by the constitution of this state. Except as otherwise expressly provided in this subsection, the fact that any matter may be the subject of a statute or the constitution of this state does not preclude negotiation thereon so long as the negotiation proposal would not prevent the fulfillment of the statutory or constitutional objective. Matters which relate to the duration of the school term, and specifically to consideration and determination by a board of education of the question of the development and adoption of a policy to provide for a school term consisting of school hours, are not included within the meaning of terms and conditions of professional service and are not subject to professional negotiation." (Emphasis supplied.)
None of the parties on this appeal challenges the use of the topic approach in considering the mandatorily negotiable categories under K.S.A. 72-5413(l). In our judgment, the topic approach was the proper method to be utilized by the secretary and the district court in interpreting K.S.A. 72-5413(l). Such an approach is in accord with the intent of the Kansas legislature and is consistent with the Kansas decisions.
Prior to 1977, there was no statutory definition of "terms and conditions of professional service" contained in the statute. An early case defining "terms and conditions of professional service" was National Education Association v. Board of Education, 212 Kan. 741, 512 P.2d 426 (1973), often referred to as the Shawnee Mission case. In that case, certain specific topics were held to be included within the phrase and the "impact test" was adopted. In 1977, the legislature amended K.S.A. 72-5413 by adopting the "impact test." The "impact test" required a court to consider whether an issue proposed for negotiation had a greater direct impact on the well being of the individual teacher than on the operation of the school system as a whole.
In 1980, the legislature adopted K.S.A. 72-5413(l). New mandatory topics were added and the "impact test" was deleted. *971 Two of the new topics added were "nonrenewal of contracts" and "re-employment of professional employees." The 1980 amendment also included the following language:
"Except as otherwise expressly provided in this subsection, the fact that any matter may be the subject of a statute or the constitution of this state does not preclude negotiation thereon so long as the negotiation proposal would not prevent the fulfillment of the statutory or constitutional objective."
The topic approach was suggested in an opinion by Justice McFarland in Chee-Craw Teachers Ass'n v. U.S.D. No. 247, 225 Kan. 561, 593 P.2d 406 (1979). Chee-Craw established certain guidelines to be followed by the courts in determining whether a particular item is mandatorily negotiable. Guidelines two and three speak directly to utilizing the topic approach in resolving disputes of this nature. They provided in part as follows:
"2. The district court shall, in its determination, decide such negotiability questions as a matter of law. Ordinarily, evidence admitted should be only the proposals themselves, but the district judge may, in his discretion, permit such other evidence as will assist him in understanding the nature and effect of the proposal. The court will, of course, hear arguments of counsel and consider prior case law.
"3. The district court shall, whenever possible, determine the matter on the `topic' basis rather than on the nuances of the actual individual proposal. For example, this court held in NEA-Topeka, Inc., 225 Kan. at 451, that class size was not negotiable. `Class size' is a topic and any particular proposal to negotiate class size, regardless of its phraseology, is not mandatorily negotiable. As another example, `insurance benefits' is a topic statutorily made mandatorily negotiable and any particular proposal, regardless of its phraseology, is mandatorily negotiable.... The district court shall not be bound by the caption given the proposal in determining the negotiability question. If a particular proposal covers more than one subject, the district court may divide the proposal." pp. 567-68.
We have no hesitancy in holding that the topic approach is the method to be followed by the Secretary of the Kansas Department of Human Resources and the district courts in determining whether certain items are mandatorily negotiable under K.S.A. 72-5413(l). Both the secretary and the district court properly followed that method in determining the negotiability of the NEA proposals in this case. We now turn to a consideration of the three specific proposals involved in this appeal to determine whether they are or are not mandatorily negotiable under the statute.
Reduction in Staff
One of the proposals that the secretary and the district court *972 found to be mandatorily negotiable was reduction in staff. The specific NEA proposal on this subject stated in pertinent part as follows:
"In the event of a reduction in staff of teachers beyond what can be accommodated by attrition, those retained shall be those teachers with the longest continuous service in the district and who hold certification appropriate for assignments in the district.
"Any inconsistent provision of this agreement notwithstanding, the commitment of the Board and the Association to affirmative action will be maintained in a layoff....
....
"Teachers affected by staff reductions ... shall be placed on a Preferential Hiring List for a period of two years. If there are two (2) or more persons on the list determined to be equally qualified for an available vacancy, preference shall be given to the person with the most service in the district (requiring a teaching or administrative certificate). If reinstated within one year from the date of layoff, an employee shall receive credit for accumulated unused sick leave and credit shall be given any teaching, supervisory or administrative experience in a similar or like position during the period of layoff after evaluation and acceptance by the Department of Personnel for purposes of negotiated salary increases they would have received had they not been laid off. Length of service for any employee employed from the Preferential Hiring List, shall date from the last date of hire held prior to layoff less the time of the layoff. Persons re-employed from the Preferential Hiring List after one (1) year from the date of layoff shall not be entitled to these benefits."
The secretary divided this proposal into three areas of concern: (1) How staff was to be reduced in the event of a layoff; (2) a plan for affirmative retention of staff during layoff; and (3) a plan for the reemployment of teachers who have been laid off due to the reduction in staff. Upon a review of K.S.A. 72-5413(l), the secretary found that the mechanics of staff reduction was a mandatorily negotiable subject. He found that the NEA's proposal relating to staff reduction was implicitly contained within the mandatorily negotiable topics of "termination and nonrenewal," and "reemployment." The secretary ruled that the portion of the NEA proposal having to do with affirmative action possibly fell within the scope of illegal subjects for negotiation due to federal and state plans relating to affirmative action. As to the third area of concern, reemployment, the secretary found that this item had been negotiated by the parties. As a result of these findings, the secretary ruled that the mechanics of staff reduction had not been properly negotiated by the board.
On appeal, the district court agreed with the secretary and *973 held that the mechanics of staff reduction was a mandatorily negotiable topic under K.S.A. 72-5413(l). In reaching this conclusion, the district court emphasized the 1980 amendments to K.S.A. 72-5413(l) which deleted the impact test and added "termination and nonrenewal of contracts" and "reemployment of professional employees" as specific topics to be included as terms and conditions of employment. We agree with the secretary and the district court that the decision to reduce staff is a managerial decision for the school board and thus is not mandatorily negotiable. However, the mechanics for termination or nonrenewal of teachers as a result of reduction of staff are mandatorily negotiable items. Reduction in staff, as in the case of any type of layoff, must be accomplished either through termination or nonrenewal. Logically that portion of the NEA proposal should be mandatorily negotiable.
Employee Files
The NEA proposal pertaining to Employee Files was as follows:
"A master file of all materials relating to an employee shall exist at the district personnel office. All materials placed in the employee's file and originating with the school district shall be available to the employee at his request for inspection in the presence of the person(s) responsible for keeping the files. Furthermore, at the request of the teacher, an Association representative may inspect the file.
"Material which is derogatory to an employee's conduct, service, character or personality, shall not be placed in an employee's file unless the employee has had an opportunity to read the material. The employee shall acknowledge that he has read such material by affixing his signature on the actual copy to be filed. Such signature does not necessarily indicate agreement with the content of such material.
"The employee shall have the right to respond to all materials contained in said file. Such response shall become part of the file. The teacher and/or his/her representative shall have the right to reproduce any of the contents of his/her file.
"Material originating outside the district before employment by U.S.D. #501 shall be placed in a separate file marked `confidential' and shall not be used against the professional employee in case of promotion or dismissal."
In examining this proposal, the secretary concluded that the school district could utilize employee files in determining an employee's salary and wages, termination, nonrenewal, and reemployment. He further concluded that access by an employee to his file would be valuable to an employee in processing a grievance. The secretary also noted K.S.A. 72-9005 which, in substance, gives a teacher a right to have evaluation documents *974 made available both to the teacher and also to a person specified by the teacher.
The district court upheld the findings of the secretary that the topic of Employee Files was a mandatorily negotiable subject under K.S.A. 72-5413(l). The court concluded that this proposal affected a teacher's salary and wages, termination and nonrenewal of contracts, reemployment of professional employees, and employee appraisal procedures. The district court also noted that, under K.S.A. 72-9005, a teacher has a right to examine and respond to evaluations. Accordingly, the district court ruled that the employee was entitled to have access to all evaluation documents and supporting materials and any information contained in his or her file relating to mandatory topics of negotiation.
In our judgment, the district court was correct in affirming the order of the secretary and in its judgment that the subject of Employee Files was mandatorily negotiable under K.S.A. 72-5413(l).
Student Teacher Program
The NEA proposal entitled Student Teacher Program stated as follows:
"It is recognized by the Board and the Association that the Student Teacher Program is vital to the continued improvement of the teaching profession and the progress of the School District.
"It is understood that each member of the bargaining unit shall be required to work with a student teacher if assigned, unless they submit a signed written request on a form made available by the District by the last day of the prior semester to be excluded from assignment for the following semester. The Superintendent shall not make a student teacher assignment to any teacher who has timely filed a written request form unless after considering such written request, he or his designee, determines there is not sufficient teachers available within the desired level (elementary or secondary) and subject matter area. In this event, the Superintendent shall make the assignment and the teacher selected shall accept the student teacher.
"Any teacher who has been involuntarily assigned a student teacher shall be exempt from a student teacher assignment the following semester provided they have timely filed a written request on a form made available by the School District.
"Teachers shall be given notice by May 15 of any student teaching assignment for both or either of the semesters in the ensuing school year.
"This provision shall not apply to the summer program."
The secretary suggested that the title of this proposal was misleading. He concluded that this proposal, in essence, only *975 dealt with the requirement that a teacher work with a student teacher and this proposal did not interfere in any way with the decision of the school board to establish or maintain a student teacher program. The secretary, in holding that this NEA proposal was mandatorily negotiable, reasoned as follows:
"Recognizing ... that a teacher is employed for the purpose of educating students of the district, it seems reasonable to assume that the additional responsibility of instructing and, perhaps, evaluating student teachers creates additional work for the teacher. The Secretary believes that the legislature intended for school boards to negotiate duties which impacts upon the hours and amounts of work required of the teacher.
"The Secretary must rule the subject matter contained in the proposal is mandatorily negotiable under the headings of hours and amounts of work or, perhaps, nonteaching duty assignments which the district has proposed to negotiate. The general subject of Student Teacher Program is a subject not contemplated by the legislature to be mandatorily negotiable. The district, by its refusal to negotiate the included subject matter in the NEA-Topeka proposal, has refused to negotiate in good faith with teachers' representatives." (Emphasis supplied.)
The secretary thus concluded that the NEA proposal pertaining to the mechanics of selecting teachers to participate in the student teacher program was within the mandatorily negotiable topic of "hours and amounts of work" under K.S.A. 72-5413(l).
The district court, on appeal, affirmed the decision of the secretary and found that this proposal was mandatorily negotiable under K.S.A. 72-5413(l), since it dealt with the requirement that a teacher work with student teachers. The court noted the NEA proposal did not in any way affect the board's managerial policy to establish or maintain a student teacher program. It only dealt with the fact that teachers would need to spend time aiding or evaluating a student teacher and, as a result, their "hours and amounts of work" would be affected. As a result, the district court held that the proposal on student teacher programs was mandatorily negotiable, since it substantially affected "hours and amounts of work," a "term and condition" of employment specified in K.S.A. 72-5413(l). We have concluded that the district court was correct in affirming the secretary and in holding that the NEA proposal covering the mechanics of selecting teachers to participate in student teacher programs fell within the category of "hours and amounts of work" and was, therefore, mandatorily negotiable.
In affirming the district court in this case, we wish to emphasize *976 that the fact that a particular proposal is mandatorily negotiable does not require a school board to accept the proposal or to reach an agreement thereon. The statute simply requires the school board to discuss the proposal and to attempt to arrive at a fair result which will benefit both the teachers and the school board. Professional negotiation in the field of public education is obviously a difficult area both for a school board and a teachers' professional organization. There is great public interest involved and the parties to professional negotiations must conduct them with that public interest in mind.
The judgment of the district court is affirmed.
HOLMES, J., not participating.
SCHROEDER, C.J., dissenting:
I respectfully dissent from Syllabus ¶¶ 2, 4 and the corresponding portions of the opinion. Despite the legislature's detailed specific designation of matters subject to negotiation the court by construction engrafts others not enumerated by the legislature. The court says "Reduction in Staff" is included in "Termination  Nonrenewal  Reemployment." It also says "Student Teacher Program" is included under "Amounts of Work." Under the court's construction anything conceivable the teachers' organization wants to negotiate can be construed as negotiable under the statute. A reasonable reading of the statute with the detailed enumeration of negotiable items authorized by the legislature indicates to me the court is legislating.