No. 82,298

JUVENTINO SOLIS, *Appellee*, v. BROOKOVER RANCH FEEDYARD, INC., *Respondent*, and UNITED STATES FIDELITY & GUARANTY COMPANY/THE HARTFORD, *Appellant*, and KANSAS LIVESTOCK ASSOCIATION INSURANCE, *Appellee*.

(999 P.2d 921)

Opinion filed March 10, 2000.

*Billy E. Newman*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause and was on the brief for appellant United States Fidelity & Guaranty Company/The Hartford.

*Robert A. Levy*, of Law Office of Robert A. Levy, of Garden City, argued the cause and was on the brief for appellee Juventino Solis.

*Stephen M. Kerwick*, of Foulston & Siefkin, L.L.P., of Wichita, argued the cause, and *D. Shane Bangerter*, of the same firm, of Dodge City, was with him on the brief for appellee Kansas Livestock Association.

The opinion of the court was delivered by

DAVIS, J.: Claimant Juventino Solis, in this workers compensation appeal, sought the cost for repairs to a prosthesis which had been provided by the employer based upon a work-related injury. United States Fidelity & Guaranty Company/The Hartford (Hartford) denied responsibility claiming the employer's new insurance

carrier, Kansas Livestock Association (KLA), would be responsible because the damage resulted from a new accident. The Workers Compensation Board (Board) concluded that ongoing repairs resulting from normal wear and tear did not constitute a new accident and were the responsibility of Hartford. We affirm.

### Facts

The facts are not in dispute. The parties stipulated that Juventino Solis, an employee at Brookover Ranch Feedyard (Brookover), on August 31, 1993, caught his left hand in a flaker machine while working at the feed mill. All fingers on his left hand had to be amputated. Hartford was the workers compensation insurance carrier for Brookover at the time of the accident. Solis was provided with a hard rubber clip prosthesis and a PVC plastic glove. However, the clip prosthesis caused problems with Solis' remnant hand, and the PVC glove proved to be flimsy and required monthly replacement. As a result, Solis was fitted with a new clip prosthesis and a silicon glove.

Originally, the clip prosthesis was designed for work and simply provided an opposition post for the remaining thumb. The silicon glove provided cosmetic restoration and was to serve during normal daily living activities. However, in practice, it became clear that the silicon glove was more efficient for use in work situations than the clip. The socket forces within the clip caused discomfort and the silicon hand allowed Solis to better hold and stabilize objects.

Highly summarized, the facts are that the claimant found it necessary to use the silicon glove at work, which increased wear and tear. As the incidents of repair increased, Hartford eventually refused to pay for the repairs, contending that financial responsibility rested with Brookover's new workers compensation carrier, KLA. Hartford claimed that the damage to the glove resulted from repetitive micro-trauma injuries to the glove, resulting in a new accident for which a new claim must be filed against Brookover and KLA.

After denying Hartford's procedural arguments relating to jurisdiction, the Board determined that no new accident occurred and that Hartford was responsible for repairs resulting from normal

wear and tear. The ultimate issue presented to this court involves the question of whether the Board erred in determining that Hartford was responsible for the repair of Solis' prosthetic glove. Hartford also advances a procedural argument before the Board. The procedural history of Solis' case is complicated, but when the history is considered in its entirety, Hartford's procedural argument evaporates. Additional facts necessary to resolve both issues are set forth in the opinion.

## Alleged Procedural Deficiency

Hartford argues that the Board's decision in this case should be overturned because the decision is based in part on the arguments of KLA. According to Hartford, KLA was not a proper party, and the Board, therefore, had no jurisdiction to receive or consider the arguments made by KLA.

In order to properly understand Hartford's argument, it is necessary to review the procedural history of this case. The injury in this case occurred August 31, 1993. Solis' initial claim was docketed as Docket No. 190,678. At that time, questions arose as to the financial responsibility for repairs to the glove. On April 2, 1997, a preliminary hearing in Docket No. 190,678 was held to determine financial responsibility for ongoing repairs. The administrative law judge ruled that Hartford was not responsible for repairs because damage to the glove was caused by a new accident for which a new claim would have to be filed. The Board affirmed that preliminary finding. Docket No. 190,678 remained open.

In accordance with the decision of the administrative law judge, Solis also filed a new claim, Docket No. 220,773, alleging that the damage to the glove constituted a new accident which now involved Brookover's new carrier, KLA. KLA authorized repair of the glove prosthesis but denied that a new accident had occurred. In this new claim, Solis requested that he be provided with a new glove to wear while the other glove was repaired. The administrative law judge denied the request for the new glove and on review, the Board held that it could not determine the medical necessity of an additional glove in review of a preliminary finding and dismissed the appeal for lack of jurisdiction on May 30, 1997.

On January 6, 1998, Docket No. 190,678 and No. 220,773 were consolidated for hearing before the Assistant Director of Workers Compensation. The Assistant Director entered an order which awarded compensation to Solis and also (1) essentially overturned the preliminary findings in Docket No. 190,678 by finding that Hartford was responsible for repairs to the glove and for providing Solis with two functioning gloves and (2) affirmed the preliminary finding in Docket No. 220,773 that the damage to the glove was not a second injury and KLA was not responsible.

Hartford appealed the finding in Docket No. 190,678 to the Board. Before the Board, Hartford argued that KLA was no longer a proper party to the proceeding because KLA had been absolved of any liability by the Assistant Director's decision pertaining to Docket No. 220,773 from which no appeal was taken. The Board disagreed and permitted KLA to remain as a party. Hartford alleges that this ruling was in error.

According to Hartford, once the Assistant Director had determined that KLA was not responsible for repairs and the claimant did not appeal from that decision, Docket No. 220,773 ended. Hartford argues that at that point, the only issue before the Board concerned Docket No. 190,678 to which KLA was not a party. Thus, Hartford contends the Board's consideration of any arguments made by KLA was erroneous and mandates reversal of the Board's decision.

This argument is without merit. It is undisputed that Docket No. 190,678 and No. 220,773 were consolidated. Although only Hartford petitioned the Board for review, K.S.A. 44-551(b)(1) does not limit the Board's scope of review to issues raised in the written request for review. Rather, once a party files a written request for review of the administrative law judge's decision, the Board has the authority to address every issue decided by the administrative law judge. *Woodward v. Beech Aircraft Corp.*, 24 Kan. App. 2d 510, 516, 949 P.2d 1149 (1997). See *Helms v. Tollie Freightways, Inc.*, 20 Kan. App. 2d 548, 553, 889 P.2d 1151 (1995). Because the two cases were never severed, the Board had jurisdiction to address any of the issues raised in the consolidated cases, and KLA was a proper party.

Further, it is clear that in addition to being consolidated, Docket No. 190,678 and No. 220,773 were inextricably intertwined. The damage to the glove and the duty to make repairs were either the responsibility of Hartford or KLA. The Assistant Director's finding in Docket No. 190,678, that Hartford was liable for repairs, necessarily led to the finding in Docket No. 220,773 that KLA was not liable. Were the Board to find that the Assistant Director had erred in holding Hartford liable, the Board would also necessarily have found that the Assistant Director had erred in absolving KLA of liability. Thus, Hartford's argument that KLA was not a proper party and had no stake in the proceedings is without merit.

## Financial Responsibility for Repairs

The question of whether the Board erred in determining that Hartford was responsible for the repair of Solis' prosthetic glove is the main issue on appeal. Hartford contends that because the glove was damaged as the result of Solis' work activities, the damage constituted a distinct and separate accident making KLA liable for repairs.

Analysis of this issue requires the interpretations of a statute and an administrative regulation. Interpretation of a statute is a question of law, and this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). It is a fundamental rule of statutory construction that the intent of the legislature governs if that intent can be ascertained. Where a statute is plain and unambiguous, courts must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. See *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

K.S.A. 44-510(a) provides:

*"It shall be the duty of the employer to provide* the services of a health care provider, and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches, *and apparatus,* and transportation to and from the home of the injured employee to a place outside the community in which such employee resides, and within such community if the director in the director's discretion so orders, including transportation expenses computed in accordance with subsection (a) of K.S.A. 44-515 and

amendments thereto, *as may be reasonably necessary to cure and relieve the employee from the effects of the injury.*" (Emphasis added.)

The word "apparatus" as contained in K.S.A. 44-510 includes appliances such as glasses, teeth, and artificial members. K.A.R. 51-9-2. Thus, it was the duty of Brookover and, therefore, Hartford, to provide Solis with the prosthetic devices. Moreover, Hartford, as workers compensation carrier at the time of the accident, has the duty to repair and replace the devices as they become unusable through normal wear and tear.

Hartford, however, argues that K.A.R. 51-9-2 mandates that once a prosthetic device is damaged as the result of work-related activities, the duty to repair and replace it becomes the duty of the current workers compensation carrier because the repair and replacement should be treated as a new accident.
K.A.R. 51-9-2 states in pertinent part:

"When an appliance . . . is already being worn, and its usefulness is destroyed by an accident, the question as to whether the appliance is to be replaced as a medical expense is one to be determined on the facts in each individual case. If an incident in direct connection with the work being done causes the destruction of the appliance being worn, it will be determined that personal injury by accident resulted, and the appliance is to be replaced as a medical expense."

Hartford contends that a new accident may and did occur in this case by reason of Solis' increase of usage of the glove while working. More specifically, Hartford argues that a series of events such as where a physical structure gives way under the stress of usual labor may constitute an accident which is compensable. See *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 379, 573 P.2d 1036 (1978). Thus, according to Hartford, the repetitive trauma to a prosthetic device should be treated in the same manner, and where a prosthetic device is eventually rendered useless by wear and tear associated with work, it should be replaced at the expense of the employer and the employer's current workers compensation carrier.

In addressing this contention the Board adopted the findings of fact and conclusions of law entered by the Assistant Director in the consolidated cases involving Solis' claim. In a well-reasoned opinion addressing the question of whether the repairs to the silicone

glove were necessitated by a new accident (Hartford's contention) or merely normal wear and tear, the Assistant Director interpreted K.A.R. 51-9-2, stating:

"The regulation provides a definition of the term apparatus as used in K.S.A. 44-510. In addition, the regulation requires a case-by-case determination of whether the apparatus is to be replaced as medical expense. Lastly, the regulation provides a standard to be used in the determination of whether a compensable work-related accident has occurred that requires the appliance to be replaced as medical expense.

"An artificial member has a limited life expectancy and there is no question that with use it will eventually require repair or replacement. It makes no difference whether the use is at work or elsewhere, the artificial member will require maintenance, repair and eventual replacement. In recognition of the fact that an artificial member has a limited life expectancy the regulation was promulgated [51-9-2] to distinguish repetitive use damage that is inevitable from a specific incident that results in the destruction of the artificial member.

"There would be no necessity for the regulation if an artificial member were to be treated the same as the human body and subject to micro trauma or repetitive use accidents. While repetitive trauma to the human body can result in a compensable work-related accident, the regulation requires an incident that causes destruction of the artificial member before an accident can be deemed to have occurred. There is no mention of repetitive use wearing out the artificial member, instead the regulation requires a specific incident that results in destruction of the artificial member.

"This is a different standard than required for a repetitive use injury to the human body and simply reflects the fact that with repetitive use the artificial member will inevitably wear out whereas the human body does not always sustain injury due to repetitive use. . . . Because of the difficulty in determining whether the work or use elsewhere caused the artificial member to need repair or replacement, the regulation simply makes such normal and expected depreciation a non-compensable event unless the need for the repair or replacement was caused by a specific work-related incident that destroys the artificial member. A finding that a new accident has occurred each time an artificial member needs routine maintenance or repair would place an unreasonable burden on the parties to constantly litigate the cause for the needed repair or replacement. Moreover, such a policy would be a disincentive for employers to hire an individual with a prosthesis."

We agree with the above analysis and interpretation of K.A.R. 51-9-2. The evidence shows that the clip prosthesis used by Solis resulted in blistering and rashes on Solis' left hand. Thereafter, Solis began using the glove prosthesis because it provided a better

grip and enabled him to perform his work duties with fewer difficulties. The glove prosthesis did not cause blistering or rashes.

The Assistant Director noted that Solis testified that the glove prosthesis began to wear out more rapidly when he began wearing it at work. He further testified that the wear occurred over a period of weeks.

The Assistant Director concluded:

"It is the determination of this fact finder that the repairs to the glove prosthesis were caused by the natural wear on the device and it is specifically held that the glove prosthesis was not destroyed by an incident sufficient to meet the requirements of K.A.R. 51-9-2. [Hartford] is responsible for such repair or replacement pursuant to K.S.A. 44-510. Unless a specific incident occurs at work that destroys the glove prosthesis, the maintenance, repair and replacement of the prosthesis remains the responsibility of [The Hartford]."

The Board adopted the above findings and conclusions that correctly concluded:

"K.S.A. 44-510(a) imposes a duty on the employer to provide the injured worker with a prothesis device or other apparatus reasonably necessary to cure and relieve the employee from the effects of his injury. The Appeals Board specifically finds when a work-related injury results in the need for a prosthesis device being provided the injured worker, then the employer is responsible for maintenance, repair, and replacement of the prosthesis device regardless of whether the device wears out from use at work or elsewhere."

As its final contention, Hartford contends that the Board's decision would violate equal protection by allowing those without prosthetic devices to recover from repetitive trauma while foreclosing those with prosthetic devices from doing so. The Board refused to address this argument finding that Hartford had failed to raise it before the Assistant Director. However, because administrative agencies cannot rule on constitutional questions, the issue of constitutionality can be raised for the first time before a court of law. *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, 81, 966 P.2d 68 (1998). Therefore, this court does have jurisdiction to address the issue.

Hartford's argument is without merit. The constitutional guarantee of equal protection requires that persons similarly situated with respect to the legitimate purpose of the law receive like treat-

ment. See *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 781, 830 P.2d 41 (1992). In this case, workers with prosthetic devices are not similarly situated as those without them. There is a fundamental difference between repetitive trauma to the human body and wear and tear on an artificial device.

We conclude that K.A.R. 51-9-2 applies only where the usefulness of an appliance, including a prosthetic device, is destroyed by a specific accident. K.A.R. 51-9-2 does not apply where a prosthetic device becomes damaged through normal wear and tear. Costs associated with normal wear and tear are the responsibility of the employer and its insurance carrier at the time of the original accident.

Affirmed.