(149 P.3d 1)
No. 95,321

KERRY DEES, *Appellant*, v. MARION-FLORENCE UNIFIED SCHOOL DISTRICT NO. 408, MARION COUNTY, KANSAS, *Appellee*.

Opinion filed September 8, 2006.

*K. Mike Kimball*, of Kimball Law Firm, LLP, of Ulysses, for appellant.

*J. Steven Pigg* and *Terelle A. Mock*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before JOHNSON, P.J., ELLIOTT and BUSER, JJ.

JOHNSON, J.: Kerry Dees challenges the nonrenewal of her teacher's contract for the 2003-2004 school year by the Board of Education (Board) of Unified School District No. 408, Marion County, Kansas (District). Her termination was precipitated by the Board's need to reduce staff because of declining enrollment and decreased financial support from the State of Kansas. Dees contends that, in terminating her employment, the Board did not comply with the reduction in force provisions of the negotiated teachers' contract and that the hearing officer violated her due process rights by failing to issue the written opinion within the statutory time frame. Finding that the Board followed the contractual provisions and that the delayed opinion did not violate Dees' due process rights, we affirm.

At the time of Dees' nonrenewal, the District had been experiencing a significant decline in student enrollment for a number of years, principally in the elementary school. Most of the District's operating monies comes from state aid, which is calculated on a per student basis. The decline in student census had a direct and significant adverse impact on the District's budget. Eighty-one percent of the budget is expended for personnel costs, making a reduction in personnel a necessary means of addressing the declining budget.

Accordingly, the Board directed the school administration to reduce personnel at the elementary level. The Board suggested that the reductions should be made in areas that would have the least impact on instructional programs and requested recommendations from the elementary school principal.

The elementary principal placed a higher priority on classroom teachers who work directly with students to achieve academic goals. That prioritization led to a recommendation that budget reductions be accomplished by: reducing the first grade sections; eliminating the Spanish program in the elementary school; and eliminating the elementary school counselor. Based upon that recommendation, the Board passed a resolution to nonrenew Dees' elementary school counselor contract for the 2003-2004 school year and issued a notice of nonrenewal on April 15, 2003.

Two weeks later, Dees requested a due process hearing pursuant to K.S.A. 72-5438 and K.S.A. 72-5439. The hearing was continued from September 10 to November 17, 2003, and again from November 17, 2003, to January 6, 2004, at the request of Dees' counsel. The hearing ultimately occurred on March 31, 2004, at which the parties agreed to submit closing arguments in writing. The final brief was filed with the hearing officer on May 28, 2004. Thereafter, the hearing officer advised the parties that, due to the death of her mother, she would like to extend the time to issue a written decision to July 12, 2004. The notice invited objections, but none was made. The decision was issued September 10, 2004.

Highly summarized, Dees contended that the Board should have nonrenewed the high school counselor, Phoebe Janzen, and moved Dees into that position, because Dees was certified as a Kindergarten through grade 12 (K-12) counselor and had more seniority with the District. The District's negotiated teachers' contract contained a specific procedure for the Board to follow in effecting a necessary reduction in force. The "Reduction of Teaching Personnel" section of the teachers' contract provided:

"1. In the event it becomes necessary to reduce the number of teachers due to program elimination or reduction, or to reduce the number of teachers in a given subject area, field, or program, or eliminate or consolidate positions, the board shall follow the procedure listed below:
   a) Attrition
   b) Teachers not holding a regular Kansas certificate will be terminated first, provided there are teachers who are fully qualified and fully certified to replace and perform all the assigned duties of the terminated teachers.
   c) A third step in the reduction of staff, provided all teachers in the areas subject to reduction are fully qualified and full[y] certificated, would be to

review teachers who have exhibited questionable performance as determined by the building principal's documentations.

d) The reduction of staff should be by departments within the school system whenever possible. Should the need arise to reduce the staff in a specific field where all are extremely competent, it may be advisable to reduce the staff in a related field within the same department and transfer the competent instructor to the related field position to strengthen further the department's staff.

e) If further reduction is still necessary, then teachers with the least number of years of continuous teaching experience in Unified School District No. 408 will be terminated first, provided there are fully qualified, fully certificated teachers to replace and perform all the needed duties of the terminated teachers.

"2. Fully qualified and fully certificated teachers shall be defined as follows:

a) Fully qualified shall be taken to mean recency of training and experience.

b) Teachers who have earned a provisional or continuing teaching certificate in a given subject area, and

c) Who meet the field and subject area requirements as established by the State Department of Education, and

d) Who have earned the minimum credit hours required by the certification section of the State Department of Education and the Board of Education of Unified School District No. 408.

"3. Length of service is defined as unbroken service in Unified School District No. 408.

"4. The board shall follow the requirements of the continuing contract law in terminating teachers in order to reduce staff."

The hearing officer found that the District acted in good faith when it initiated a reduction in force; that it was justified in ordering the reduction at the elementary school level; that it acted in good faith in eliminating the elementary school counselor position; that the decision to nonrenew Dees was for good cause and not arbitrary, capricious, or fraudulent; and that the Board correctly applied the reduction in force provisions of the teachers' contract. Dees appealed to the district court and filed a motion for summary judgment. In its memorandum decision denying summary judgment, the district court also affirmed the decision of the hearing officer, after concluding that (1) the hearing officer acted within her scope of authority; (2) her decision was supported by substantial evidence; and (3) no evidence suggested that the hearing officer acted arbitrarily, capriciously, or fraudulently.

At oral argument, Dees' counsel conceded that the reduction in personnel was legitimately necessary and made in good faith. However, counsel suggested that both the high school and elementary counsel positions were being eliminated to be replaced by a consolidated position. Similarly, counsel refused to concede that it was the declining enrollment in the elementary school which necessitated the personnel reductions. Neither argument was presented in appellant's brief, and neither is supported by the record. Thus, of the four issues identified by the hearing officer, the only one squarely before us is whether the Board correctly applied the contract procedure for reducing personnel.

### APPELLANT'S ARGUMENTS/STANDARD OF REVIEW

Dees begins by citing to *U.S.D. No. 501 v. Secretary of Kansas Department of Human Resources*, 235 Kan. 968, 973, 685 P.2d 874 (1984), for the proposition that "the mechanics of staff reduction was a mandatorily negotiable topic under K.S.A. 72-5413(1)." She contends that the teachers' contract at issue is the direct result of that precedent. Then, she frames the question as "whether or not the School District can substitute the Superintendent's discretion for and in lieu of, the mandatory mechanical requirement of the contract."

From that point, Dees argues that the contract procedure required her retention based on the seniority provision of section 1(e). She contends the Board circumvented the contractual mechanics by ignoring case precedent establishing that she is fully qualified to be a high school counselor as a matter of law and by improperly dividing the two counseling positions into sub-specialties, *i.e.*, high school and elementary school. Finally, Dees contends that the hearing officer grafted new provisions onto the teachers' contract when she compared the qualifications of Dees and Janzen because a mechanical application of the reduction in force procedure does not permit a comparison of the qualifications of two fully certified teachers.

Dees does not favor us with a proposed standard of review. Her arguments appear to intertwine both contract and statutory interpretations. Ordinarily, our review of those issues would be unlim-

ited. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004) (interpretation of a statute is a question of law); *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001) (the interpretation and legal effect of written instruments are matters of law over which an appellate court exercises unlimited review). However, our review of a hearing officer's decision in a due process proceeding should only encompass whether: (1) the hearing officer's decision was within his or her scope of authority; (2) substantial evidence supports the hearing officer's decision; and (3) the hearing officer acted fraudulently, arbitrarily, or capriciously. *Kansas Board of Education v. Marsh*, 274 Kan. 245, 255, 50 P.3d 9 (2002). On appeal from the district court's decision, an appellate court reviews the due process hearing officer's decision as though the appeal was made directly to the appellate court, which is subject to the same limitations of review as the district court. *Marsh*, 274 Kan. at 255.

## APPLICATION OF CONTRACTUAL PROVISIONS

First, we consider whether the Board followed the contractual procedure for a reduction in force, mechanically or otherwise. The hearing officer found that the superintendent had followed the step-by-step approach set forth in the teachers' contract, considering each sub-paragraph of section 1 in order. The District had experienced no attrition in the affected subject area and all of the teachers under consideration held a Kansas certificate, rendering sections 1(a) and 1(b) inapplicable.

The last three steps are set forth in sections 1(c), 1(d), and 1(e), which we will reiterate:

"c) A third step in the reduction of staff, provided all teachers in the areas subject to reduction are fully qualified and full[y] certificated, would be to review teachers who have exhibited questionable performance as determined by the building principal's documentations.

d) The reduction of staff should be by departments within the school system whenever possible. Should the need arise to reduce the staff in a specific field where all are extremely competent, it may be advisable to reduce the staff in a related field within the same department and transfer the competent instructor to the related field position to strengthen further the department's staff.

e) If further reduction is still necessary, then teachers with the least number of years of continuous teaching experience in Unified School District No. 408 will be terminated first, provided there are fully qualified, fully certificated teachers to replace and perform all the needed duties of the terminated teachers."

There is no contention that either Dees or Janzen had exhibited questionable performance. However, the hearing officer found that the proviso in the third step, that all teachers subject to reduction be fully qualified and fully certificated, contemplated that such a qualification determination was to be made before reaching the last step of applying seniority.

Dees does not discuss this finding, but rather just asserts that the seniority analysis of section 1(e) was applicable. One could certainly argue that the third step did not apply, where there was no building principal's documentation of an exhibition of questionable performance. Further, the fourth step of the contract is difficult to apply to this circumstance without knowing whether the elementary and high school counselor positions were in the same department of the school system, and whether they were "in a specific field" or "in a related field within the same department."

Nevertheless, even if we accept Dees' assertion that the reduction was governed by the last step contained in section 1(e), that analysis does not end at simply comparing years of service. The teachers with the least seniority are terminated first, "provided there are fully qualified, fully certificated teachers to replace and perform all the needed duties of the terminated teachers." Therefore, it was incumbent upon the Board to determine whether Dees was fully qualified to perform all of the necessary duties assigned to the high school counselor.

In making that qualifications determination, the Board is guided by the definition in section 2(a), which recites that "[f]ully qualified shall be taken to mean recency of training and experience." Accordingly, the Board had to identify the "needed duties" of the high school counselor position, as referenced in contract section 1(e), and then ascertain whether Dees had the recent training and experience to permit her to perform all of those duties. That is precisely the procedure employed in this case.

The superintendent assessed that there were three important aspects of the high school counselor position: (a) the design and development of a high school class schedule; (b) guiding students in making decisions about post-secondary training/education; and (c) assisting students in obtaining financial aid for post-secondary training/education. The professional development and training records for both Dees and Janzen were reviewed, along with their respective experience while at U.S.D. 408.

Dees has a Master's Degree in School Counseling, and she is certified to teach K-12 Instrumental Music and to be employed as a K-12 School Counselor. She is tenured with approximately 13 years' continuous employment with the district. Dees was previously a middle school counselor, and she occasionally talked with high school students when she served as a softball coach in 1998. However, she never worked as a high school counselor for the district; she had no experience assisting high school students obtain scholarships or loans; she had no experience advising high school students regarding post-secondary training, college selection, securing college placement, or completing the college application process; and she had no experience developing the high school schedule or assisting high school students with class scheduling. Obviously, Dees' recent teaching experience had not prepared her to perform the duties which were identified as important aspects of the high school counselor position.

During 2001-2002, Dees' professional development and training records contained credits for 27 professional development points, which were from "Trish Wells Inservices" and "Make It & Take It For K-8 Counselors." In 1998, Dees took two graduate courses, but they were not submitted for professional development credits. Dees' recent training was not directed at performing the high school counselor duties.

On the other hand, Janzen has a Master's Degree in K-12 School Counseling and a Master's Degree in Gifted Education. She had been continuously employed by the district as the high school counselor for 5 years and was tenured. Janzen is certified to teach K-12 physical education, K-9 elementary, K-12 gifted education, K-9 school counselor, 7-12 school counselor, K-12 Building Ad-

ministration, and pre-K-12 Building Leadership. She had experience in all the areas in which she was certified, except classroom teaching and building administration.

Janzen developed high school class schedules and the master schedule each year, enrolled new students, helped with classes, and worked with truant students. She worked closely with the high school principal and substituted as an administrator when the principal was absent. She assisted the high school principal with student disciplinary and behavior problems, made recommendations on disciplinary action, and supervised a peer mediation team. In addition, Janzen advised students in making decisions about post-secondary training and education, corresponded with colleges, made inquiries for student visits, and taught students to use a computerized program to research colleges. Janzen was also experienced in helping students obtain college financial aid, complete scholarship applications, and find local scholarships.

Janzen's professional development and training records reflected 55 professional development points in 2002-2003, which included "QPA Chair Training," "Teaching Reading in the Content Area," "No Child Left Behind," "Closing the Achievement Gap," and "Committee Meetings." During 2001-2002, Janzen earned 37 professional development points, which included workshops in "District Discipline Team," "Student Improvement Team," and "Trish Wells Discipline." In 2000-2001, Janzen earned 80 professional development points, which included workshops in "DSIT Membership," "Scholarship Training," "Parent Network," "ESSDACK Presentation," "Personality," "SIT/Advanced SIT Team," and "Technology & Learning Conference."

Dees complains that the contract does not permit a comparison of the qualifications of two "fully qualified," tenured teachers. We note that contract section 1(d) appears to invite such a subjective and discretionary comparison of qualifications in the context of moving "extremely competent" instructors into a related field. However, as we have noted, the record does not clearly implicate contract section 1(d).

Nevertheless, even under section 1(e), the evidence established that Dees was not, by contractual definition, "fully qualified" to

replace Janzen and perform the duties of the high school counselor, notwithstanding Dees' seniority. The Board's review of Janzen's training and experience, which corroborated that she was fully qualified to retain the high school counselor position, did not negate the assessment of Dees' qualifications. In short, we find that the Board followed the reduction in personnel procedure set forth in the negotiated contract.

## CONTRACT VALIDITY

Dees argues that, pursuant to *Bauer v. U.S.D. No. 452*, 244 Kan. 6, 765 P.2d 1129 (1988), she was "fully qualified" for the high school counselor position, as a matter of law, by virtue of her certification as a K-12 counselor. The apparent suggestion is that the negotiated contract provision defining "fully qualified" as something more than "fully certificated" was invalid, or at least superfluous.

In *Bauer*, a tenured industrial arts teacher was nonrenewed pursuant to a reduction in force. At the same time, the U.S.D. No. 452 Board hired an outside nontenured teacher for a junior high school social science position. Bauer was certified to teach social science, but he had never taught that subject, and the Board was apparently unaware of Bauer's certification to teach social science. The Board did not consider Bauer for any other position within the district, including the social science opening. U.S.D. No. 452 had a policy for handling personnel reductions which used language nearly identical to that contained in section 1 of the negotiated contract in this case. However, the Board policy in *Bauer* apparently contained no definition of "fully qualified," like that set forth in section 2 in the instant contract.

Bauer challenged his nonrenewal based in part on the Board's concurrent hiring of a nontenured teacher for a subject that Bauer was certified to teach, *i.e.*, he claimed he should have been offered the social science position. A due process panel upheld the nonrenewal, and that decision was affirmed by the Board, the district court, and the Court of Appeals. The Supreme Court reversed and remanded with an order to reinstate Bauer and to calculate back

pay on the basis of the salary to which Bauer would have been entitled in the social science position. 244 Kan. at 15.

The Court of Appeals had relied on its interpretation of the prior decision in *Coats v. U.S.D. No. 353,* 233 Kan. 394, 662 P.2d 1279 (1983). In *Bauer,* the Supreme Court explained how it perceived that its holding in *Coats* applied to Bauer's situation:

> "After reviewing case law from other jurisdictions involving nonrenewal of tenured teachers in reduction in force situations, we held that, under Kansas statutes in such cases, school boards should first conduct a good faith examination of the competence, interest, and training of all teachers in the area where the reduction of staff is to occur. Where there are tenured and nontenured teachers in the department and all are qualified, the nontenured teachers should be the first terminated. 233 Kan. at 401-02.
>
> "Since Coats was clearly certified *and* qualified, left unanswered was whether, in all reduction in force nonrenewal cases, certification by the State Board of Education in a subject which the tenured teacher is not currently contracted to teach entitles that tenured teacher to preference over a nontenured teacher in that subject. The Court of Appeals interpreted our language in *Coats* to hold that, in reduction-in-force nonrenewal cases, preference is to be afforded teachers who are certified and qualified, and that 'qualified' is something other and more than certified.
>
> "What the Court of Appeals failed to recognize is that, prior to nonrenewing Bauer's contract, the Board had made no determination regarding Bauer's qualifications to teach the social science courses. When a board of education seeks to nonrenew a tenured teacher's contract in a reduction in force situation, it must examine the teacher's competence, interest, and training on the record. The due process act protects tenured teachers from dismissal without good cause. [Citation omitted.] Good cause must be supported by substantial evidence and the burden of proof is on the Board. [Citations omitted.] Absent good cause, shown on the record, a tenured teacher will be given preference in filling vacancies. [Citation omitted.]" *Bauer,* 244 Kan. at 11.

One might have expected the opinion, at that point, to have simply reversed the lower tribunals' decisions, based upon the school board's failure to examine Bauer's competence, interest, and training in social science and upon an absence of a record of good cause as to why the tenured Bauer was not given preference over the nontenured teacher in filling the social science position. However, the Supreme Court chose to launch into a discussion of the interplay between a teacher's certification in a particular subject

and his or her qualification to teach that subject, eventually concluding:

> "The State Board of Education is statutorily the only agency authorized to set standards for teacher certification. Certification by the State Board of Education, rather than subjective qualifications set up by each local school board, determines that a teacher is qualified to teach the subjects endorsed on the teaching certificate. When a teacher is 'certified,' a rebuttable presumption exists that the teacher is 'qualified.' It then becomes the burden of the school board to establish the nonexistence of the presumption by substantial evidence." *Bauer*, 244 Kan. at 13.

Dees interprets that portion of the *Bauer* decision to mean that U.S.D. 408 was not permitted to contractually distinguish between a teacher being fully certified and being fully qualified because they mean the same thing under the law. Therefore, Dees contends that she was fully qualified to be the high school counselor and her seniority is the only factor that the Board could consider.

Granted, *Bauer* did not explicitly restrict its holding on teacher qualification to the facts of the case at hand, in which a tenured teacher was pitted against a nontenured teacher. Nevertheless, the holding was not that certification always equals qualification, but rather that certification creates a presumption of qualification which can be rebutted with substantial evidence. Further, the *Bauer* court clarified that its decision was applicable to the tenured versus nontenured teacher scenario, when it summed up its opinion as follows:

> "As we held in *Coats*, we reject the argument that the school board has absolute discretion to nonrenew whomever it wishes in reduction in force situations. In each case, the statutorily mandated due process protections for tenured teachers require the school board to conduct a good faith examination of the competence, interest, and training of all teachers in the area where the reduction in staff is to occur. Where there is a need for a reduction in force, before a tenured teacher can be nonrenewed, the Board must conduct a good faith examination into all areas in which the tenured teacher is certified. Where there are vacancies in areas in which the tenured teacher is certified, *absent good cause*, the tenured teacher should be placed in that position. This procedure ensures a fair and equitable decision for the teacher, while allowing school boards the discretion to shape a quality education program for their students." (Emphasis added.) *Bauer*, 244 Kan. at 14.

The Supreme Court went on to find that the Board's failure to recognize Bauer's certification in social science and its failure to determine whether he was qualified to teach social science resulted in a nonrenewal without good cause. 244 Kan. at 14. Therefore, we do not read the decision as precluding U.S.D. No. 408 from establishing, via a negotiated contract, a standard for measuring the qualification of a certified, tenured teacher to replace another, certified and tenured teacher in a different job. Rather, such a provision specifically comports with *Bauer's* directive "to conduct a good faith examination of the competence, interest, and training of all teachers in the area where the reduction in staff is to occur." *Bauer*, 244 Kan. at 14. Here, the section 2(a) definition of "fully qualified" merely provided the manner in which the school board could determine whether substantial evidence existed to rebut the *Bauer* presumption that certified means qualified.

Further, the *Bauer* opinion begins by referring to the tenure protections of the Teacher Due Process Act, K.S.A. 72-5436 *et seq.*, and the entire decision is colored by the fact that Bauer was displaced by a nontenured teacher. Dees appears to ignore that Janzen is also a tenured teacher. Here, unlike the scenarios in *Bauer* and *Coats*, Janzen is just as entitled as Dees to the statutory protection afforded to tenured teachers.

Dees appears to believe that she has superior rights because of her seniority. This court has rejected that notion. "Our Kansas Legislature did not provide in either the Continuing Contract Law, K.S.A. 72-5410 *et seq.*, or the Due Process Procedure Act, K.S.A. 72-5436 *et seq.*, that reduction in size of teaching staffs must be accomplished on a seniority basis." *O'Hair v. U.S.D. No. 300*, 15 Kan. App. 2d 52, 63, 805 P.2d 40, *rev. denied* 247 Kan. 705 (1990). Granted, Dees had a contractual right to preference based upon seniority. However, there was nothing in the law which precluded the District from conditioning that preference upon the senior teacher possessing the training and experience necessary to perform the critical duties of the position occupied by a less-senior teacher.

### CLASSIFICATION OF POSITIONS

Dees makes a brief argument that the Board erred in distinguishing between the elementary and the high school counseling

positions. She relies on the *Coats* rejection of the argument that teaching English in junior high was a different specialty from teaching English in high school. *Coats* noted that "[t]hose categories are not recognized in either school board policy, certification or the law." 233 Kan. at 402.

Dees' argument is unavailing. First, the record would suggest that there may well be a distinction in certification, given that Janzen apparently held separate certificates for K-9 counselor and for 7-12 counselor. More importantly, however, the decision in this case was not based solely upon a perceived categorization of the positions. Coats was not considered for the junior high position because the Board considered it inherently different from the high school position. Here, the Board identified the specific needed duties of the high school counselor position and examined Dees' training and experience to determine whether she was qualified to perform those specific duties. There was no improper creation of sub-specialties in this case.

## DUE PROCESS

Finally, Dees contends that she should have been granted summary judgment because her due process rights were violated by the hearing officer's delay in issuing a decision. The Board argues that Dees failed to raise this issue during the administrative proceedings and, thus, failed to preserve the issue for appeal.

Generally, in an appeal from a decision by an administrative agency, a party is limited to the issues raised at the administrative hearing. *In re Tax Appeal of Panhandle Eastern Pipe Line Co.*, 272 Kan. 1211, 1235, 39 P.3d 21 (2002). However, because an administrative agency cannot rule on constitutional questions, the issue of constitutionality can be raised for the first time before a court of law. *Solis v. Brookover Ranch Feedyard, Inc.*, 268 Kan. 750, 757, 999 P.2d 921 (2000); *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, 81, 90, 966 P.2d 68 (1998) (constitutional challenge first addressed on appeal from State Board of Education).

In the district court, Dees objected to the hearing officer's delay in issuing the decision, claiming the delay violated her constitu-

tional right to procedural due process. Therefore, we will address the issue on appeal.

Dees' argument is based upon K.S.A. 72-5443(a), which provides: "Unless otherwise agreed to by both the board and the teacher, the hearing officer shall render a written opinion not later than 30 days after the close of the hearing, setting forth the hearing officer's findings of fact and determination of the issues." Dees contends the hearing officer was required to issue a decision within 30 days of March 31, 2004, when the hearing was held. However, the parties agreed to submit their closing arguments in writing, so that the "close of hearing" did not occur until the last brief was filed on May 28, 2004.

Thereafter, the hearing officer proposed a deadline of July 12, 2004, for the decision and requested that Dees and the Board notify her of any objections. Dees did not object. "A party may not invite error and then complain of that error on appeal. [Citation omitted.]" *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003). By her silence, Dees acquiesced in the hearing officer's deadline extension proposal.

Nevertheless, the hearing officer did not meet her proposed deadline of July 12, 2004. The decision was issued approximately 2 months later, on September 10, 2004. The record does not suggest that Dees agreed to any extension beyond July 12, and, therefore, we will consider whether the last 2 months' delay violated Dees' due process rights.

The district court found that the 30-day time limitation of K.S.A. 72-5443 was directory and not mandatory. The court recited that it relied on the Kansas Supreme Court decision in *Leaming v. U.S.D. No. 214*, 242 Kan. 743, 750 P.2d 1041 (1988). On appeal, Dees suggests that *Leaming* held the time limitations of K.S.A. 72-5443 were directory, rather than mandatory. She then points out that the due process procedure for terminated teachers has changed significantly since the *Leaming* decision and contends that, as a matter of public policy, it is imperative that we overrule *Leaming*.

The first impediment to our granting Dees' request is that we simply do not have the authority to overrule a decision of our Su-

preme Court. See *Noone v. Chalet of Wichita*, 32 Kan. App. 2d 1230, 1236, 96 P.3d 674, *rev. denied* 278 Kan. 846 (2004) (Court of Appeals duty bound to follow Kansas Supreme Court precedent). Further, we have been discouraged from using public policy as the basis for our decisions. See *O'Bryan v. Columbia Ins. Group*, 274 Kan. 572, 575, 56 P.3d 789 (2002) (Supreme Court criticized the Court of Appeals for making what it perceived to be a public policy decision). Finally, *Learning* simply did not hold that the 30-day limitation of K.S.A. 72-5443(a) was directory, rather than mandatory; therefore, the case is not on point. That decision dealt with the timing of the due process *hearing* and with the school board's failure to review the hearing committee's decision and render a final decision, so as to trigger the teacher's right to appeal.

Nevertheless, precedent exists for finding that the 30-day time limit for rendering a written opinion in K.S.A. 72-5443(a) is directory. In *Expert Environmental Control, Inc. v. Walker*, 13 Kan. App. 2d 56, 58, 761 P.2d 320 (1988), this court construed the time limit provision of K.S.A. 1987 Supp. 77-526(g), which was a part of the Kansas Administrative Procedure Act, K.S.A. 1987 Supp. 77-501 *et seq*. That statute required the rendering of a written final order within 30 days after the conclusion of the hearing. However, the Kansas Department of Health and Environment had issued its order approximately 5 months after the hearing, and the appellant contended the order was void.

In concluding that the 30-day limit of K.S.A. 1987 Supp. 77-526(g) was not mandatory, the *Walker* court opined:

" 'In determining whether a legislative provision is mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, *but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory.*' (Emphasis added.) *Paul v. City of Manhattan*, 212 Kan. 381, Syl. ¶ 1, 511 P.2d 244 (1973)." 13 Kan. App. 2d at 58.

In addition, factors that indicate whether a statute is mandatory include: " '(1) the presence of negative words requiring that an act shall be done in no other manner or at no other time than that

designated, or (2) a provision for a penalty or other consequence of noncompliance.' [Citation omitted.]" 13 Kan. App. 2d at 58 (quoting *Paul*, 212 Kan. 381, Syl. ¶ 2).

This court noted that K.S.A. 1987 Supp. 77-526(g) permitted the 30-day period to be waived or extended, and, therefore, the statute did not include negative words that required the order to be rendered at no other time. 13 Kan. App. 2d at 58. Further, there was no penalty provision or consequence for noncompliance. Accordingly, this court concluded that "[t]he 30-day time limit is a procedural requirement, directory in nature, intended to secure order, system, and forthwith dispatch of public business." 13 Kan. App. 2d at 58.

The same analysis applies to K.S.A. 72-5443(a). The parties may agree to ignore the 30-day limit, and there is no penalty or consequence recited for noncompliance. Further, as counsel for the District argued, the appellee had no more control over the hearing officer's completion of her written opinion than did the teacher. We find the analogous holding in *Walker* to be persuasive and affirm the district court's holding that the 30-day time limit in K.S.A. 72-5443(a) was directory, rather than mandatory.

In *Walker*, the issue was whether the administrative order was void. Here, however, Dees makes a due process argument. Therefore, we must consider whether the hearing officer's delay in issuing the written decision, although not a statutory violation, nevertheless denied Dees notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *In re Landrith*, 280 Kan. 619, 640, 124 P.3d 467 (2005). The *Leaming* court cited to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985), in which our United States Supreme Court recognized that, at some point, post-termination delays can become a constitutional violation. 242 Kan. at 752.

Dees does not complain about the time it took to complete the hearing. Dees requested a due process hearing the end of April 2003, but the hearing did not close until the last brief was filed on May 28, 2004, over 1 year later. As noted, Dees acquiesced in the July 12, 2004, opinion date. Therefore, the time frame before us for consideration is the 60-day delay after July 12, 2004.

In her brief, Dees argues that she suffered damages because of a complete loss of a teaching position and salary for the 2004/2005 school year and the necessity to accept a part-time position for the 2005/2006 school year. We note that in her summary judgment affidavit, Dees claimed she did not teach in the 2003/2004 school year and had a part-time position in 2004/2005. Nevertheless, even if we were to accept that Dees' lack of employment was caused by the pendency of her due process procedure, we cannot lay the blame at the feet of the hearing officer's opinion. The main reason that Dees did not learn her fate earlier was that it took over a year to complete her due process hearing. In that connection, Dees requested and received continuances totaling approximately 4 months. Her counsel agreed to the submission of closing arguments in writing, which extended the proceedings for another 2 months. Having actively participated in extending the hearing process by at least 6 months, we find unpersuasive Dees' claim of prejudice emanating from the 60-day delay at the end of the process.

Dees does not suggest and the record does not support that any improper motive was behind the delay. To the contrary, the hearing officer specifically advised the parties of the personal situation which was interfering with her completion of the opinion. Further, the record suggests that, throughout the proceedings, the hearing officer made every effort to accommodate Dees' requests. Further, we would note that the opinion was lengthy and comprehensive, an obviously time-consuming endeavor.

In summary, we find that the hearing officer's failure to issue a written opinion within the 30-day time limit set forth in K.S.A. 72-5443(a) did not automatically require the district court to reverse the nonrenewal of Dees' contract. The minimal delay of 60 days to issue the written opinion did not deprive Dees of her requisite due process hearing at a meaningful time and in a meaningful manner. Dees failed to establish that the 60-day delay caused her prejudice. The district court's summary judgment on this issue is affirmed.

Affirmed.