NOT DESIGNATED FOR PUBLICATION

No. 115,048

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FREDERICK EUGENE MARSH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; AMY L. HARTH, judge. Opinion filed December 2, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, for appellee.

Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.

*Per Curiam*:  Frederick Eugene Marsh appeals from the district court's denial of his 2015 motion to correct illegal sentence, alleging the district court should not have classified a 1992 burglary conviction and a 1991 attempted aggravated assault conviction as person felonies. Marsh argues these convictions should not have been scored as person felonies, citing *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015); *State v. O'Connor*, 299 Kan. 819, 326 P.3d 1064 (2014); and *State v. Long,* No. 110,852, 2014 WL 4723750 (Kan. App. 2014) (unpublished opinion).

1

After holding an evidentiary hearing on the classification of the 1992 burglary, the district court improperly classified the burglary conviction as a person felony. However, the district court properly classified the 1991 aggravated assault conviction as a person felony. Therefore, the district court should have granted the motion in part and denied the motion in part. Thus, we affirm in part, reverse in part, and remand to the district court with instructions to direct the preparation of an amended presentence investigation (PSI) report in accordance with our ruling and to hold a new sentencing hearing.

FACTS AND PROCEDURAL BACKGROUND

This case is unusual because the district court heard testimonial evidence at the sentencing hearing on the facts surrounding the 1992 burglary conviction.

On October 31, 2013, Frederick Marsh pleaded guilty to one count of unlawful possession of methamphetamine with intent to distribute. The PSI report assigned Marsh a criminal history score of "B". Marsh's criminal history consisted of 10 prior convictions: Six nonperson adult misdemeanors, two unscored adult misdemeanors, and two adult person felonies. The two adult felony convictions that were classified as person felonies were both Kansas convictions:  A 1991 attempted aggravated assault conviction and a 1992 burglary conviction.

Before sentencing, Marsh filed a motion to challenge criminal history, objecting to having the 1992 burglary conviction being classified as a person felony because the burglary conviction was before Kansas implemented the sentencing guidelines. The motion did not state an objection to having the 1991 attempted aggravated assault conviction being classified in his criminal history as a person felony. The motion also noted that Marsh had previously filed a pro se motion in 1996, asserting a challenge to the 1992 burglary classification.

2

The State opposed Marsh's renewed challenge to his criminal history. In its response to Marsh's challenge to the classification of the burglary conviction as a person felony, the State said that it would present certified copies of the 1992 complaint, 1992 plea journal entry, 1992 sentencing journal entry, and 1992 PSI report, all of which the State argued would clearly reflect that the defendant had pleaded guilty to burglary of a home, a person felony. The State also alleged that Marsh had admitted on at least two occasions that the burglary conviction was a conviction for burglary of a home.

On April 23, 2014, the district court heard the challenge to the criminal history. The State presented evidence to which Marsh's counsel made no general objections to the procedure. There was no procedural discussion, such as a request for jury trial or waiver of a jury trial.

At the April 23, 2014, hearing, the State offered several exhibits purporting to show that Marsh's burglary conviction was for the burglary of a dwelling. The State's first exhibit was a copy of the complaint in 92CR258, the burglary conviction. Count 1 of the 1992 burglary charging complaint stated that Marsh "entered into the home of Lynn Robinson with the intent to commit theft therein."

Next, the State introduced a copy of Marsh's guilty plea to the burglary count in the 1992 complaint. In addition, the State also admitted the PSI report for the burglary sentencing. As part of the introduction of this evidence, the State asked the court to take special notice of Marsh's version of events as written in the PSI report, which the State characterized as Marsh admitting that "he entered a home and stole items from a residence or from a home." Marsh's 1992 version of the events, as he wrote for the 1992 PSI report, stated that he stole a chain saw, weed eater, tools, a microwave oven, color TV, and an air compressor from a house and shed owed by Lynn Robinson. Later, Marsh wrote that he and his friend "went to the hous[e] . . . went in took the [s]tuff and took it to the [auction]."

3

Finally, the State admitted exhibits from Marsh's 1999 conviction for possession of cocaine. The State emphasized to the court that the PSI report for the 1999 possession of cocaine conviction scored the 1992 burglary conviction as a person felony. The State noted that for the 1999 possession of cocaine sentencing, Marsh's attorney had filed a motion for departure in which Marsh's attorney acknowledged that Marsh had a previous conviction for burglary of a dwelling for purposes of the motion. The 1999 sentencing departure motion does state that Marsh had a conviction for burglary of a dwelling.

After the State finished admitting its exhibits at the April 23, 2014, hearing on the objection to the criminal history, Marsh testified. Marsh testified that the structure that was burglarized was not a dwelling, but rather an unoccupied structure. Marsh described it as a cabin and two sheds. He said he did not go into the cabin but only went into the two sheds. Marsh testified that he was told nobody lived in the cabin and it was "just for show." Then, he said he "never entered the house." However, on cross-examination, when the State asked whether Marsh admitted that he went in the house in the 1992 PSI Marsh said, "I admit to goin' inside the home." But then Marsh said, "that ain't what happened."

At the April 2014 hearing, the district court found the State had met its burden of proof by a preponderance of the evidence that the burglary conviction should be classified in Marsh's criminal history as a person felony. The court said that the most convincing evidence was the PSI report in which Marsh stated in his own words that he was at a house. With the 1992 burglary and the uncontested 1991 attempted aggravated assault convictions included in the criminal history, both classified as person felonies, the district court sentenced Marsh to 122 months' imprisonment.

A search of the appellate court records shows that there is no appeal docketed of the district court's sentence in this case.

Subsequently, on January 9, 2015, Marsh filed a motion to correct illegal sentence in which he objected to having the 1992 burglary classified as a person felony in his criminal history. Again, Marsh did not object to having the 1991 attempted aggravated assault conviction classified as a person felony in his criminal history.

In his motion to support his argument, Marsh cited *State v. Murdock,* 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015). Marsh filed an amended motion, adding three new case citations as authority:  *Dickey*, 301 Kan. 1018; *O'Connor*, 299 Kan. 819; and *Long*, 2014 WL 4723750. The State objected and argued that Marsh's motion should be denied without the need for a hearing because *Murdock* dealt with classifying out-of-state convictions and all of Marsh's convictions were in Kansas. The State did not address the issue of whether *Dickey* could be applied to Marsh's motion.

The district court chose to have a hearing at which the district court denied Marsh's motion, finding that *Murdock* did not apply because all of Marsh's relevant convictions were in Kansas. The district court stated it did not address whether *Dickey* or the other cases cited by Marsh could be applicable to the 1992 burglary conviction.

Marsh timely appealed.

ANALYSIS

*Did the district court properly classify Marsh's 1992 burglary conviction as a person felony?*

On appeal, Marsh argues that pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 123 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Dickey,* a court may not find that a defendant burglarized a dwelling unless the existence of a dwelling was a statutory element of the offense at the time of the defendant's prior conviction. At the time of

Marsh's 1992 burglary conviction, the Kansas burglary statute did not require a court to find that Marsh burglarized a dwelling in order to be convicted of burglary. Therefore, Marsh argues that the district court improperly scored Marsh's 1992 burglary conviction as a person felony.

The State argues that caselaw permitting *Dickey* to be applied through a motion to correct an illegal sentence—especially to a final conviction—was wrongly decided. The State also argues that there was no *Apprendi* violation because there can be no *Apprendi* violation if the facts are admitted by the defendant. In support, the State cites several places in the record where the State claims that Marsh admitted he burglarized a dwelling or home in 1992. The State also argues that if there is an *Apprendi* violation, the error is harmless because Marsh's own admissions provide overwhelming and uncontested evidence that the 1992 burglary conviction involved a dwelling.

### 1. *Apprendi*, *Descamps*, and *Dickey*

K.S.A. 22-3504(1) provides that a "court may correct an illegal sentence at any time." Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which the appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Additionally, determining "[w]hether a prior conviction or adjudication was properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review." *Dickey*, 301 Kan. at 1034.

In *Dickey,* our Supreme Court emphasized the application of *Apprendi* in Kansas, holding that under *Apprendi,* other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 301 Kan. at 1036, citing *Apprendi*, 530 U.S. at 490.

6

The court in *Dickey* further stated: *"Apprendi* is implicated, however, when a district court, for purposes of enhancing a defendant's sentence for a current conviction, makes findings of fact at sentencing that go beyond merely finding the existence of a prior conviction or the statutory elements that made up the prior conviction." 301 Kan. at 1036, citing *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 2288-89, 186 L. Ed. 2d 438 (2013).

In *Dickey*, our Supreme Court addressed the issue of classifying a pre-Kansas Sentencing Guidelines Act burglary offense. Our Supreme Court explained:

> "[I]n order to classify a prior burglary conviction or adjudication as a person offense under K.S.A. 2014 Supp. 21-6811(d), a sentencing court must find that the prior burglary involved a 'dwelling,' *i.e.*, 'a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home, or residence.' K.S.A. 2014 Supp. 21-5111(k). But the burglary statute in effect when Dickey committed his prior burglary did not require evidence showing that the structure burglarized was a dwelling. See K.S.A. 1991 Supp. 21-3715. Thus, determining whether Dickey's prior burglary involved a dwelling would necessarily involve judicial factfinding that goes beyond merely finding the existence of a prior conviction or the statutory elements constituting that prior conviction. Accordingly . . . classifying Dickey's prior burglary adjudication as a person felony violates his constitutional rights as described under *Descamps* and *Apprendi*." *Dickey*, 301 Kan. at 1021.

As determined by our Supreme Court in *Dickey*, the burglary statute in effect when Marsh committed his 1992 prior burglary did not require evidence showing that the structure burglarized was a dwelling. See *Dickey*, 301 Kan. at 1022; K.S.A. 1991 Supp. 21-3715(1) (defining burglary as "knowingly and without authority entering into or remaining within any: (1) Building, manufactured home, mobile home, tent or other structure, with the intent to commit a felony or theft therein.").

7

This court recently addressed whether a conviction under the 1992 burglary statute can be scored as a person felony in *State v. Olivas*, No. 113,451, 2016 WL 1391786 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* April 29, 2016. In that case, one of the crimes in Olivas' PSI report was described as "Burglary (Dwelling)." *Olivas*, 2016 WL 1391786, at *1. Olivas did not object to his criminal history. On appeal, Olivas "argued that his 1992 Kansas burglary conviction should have been classified as a nonperson offense based on this court's decision in *Dickey*." 2016 WL 1391786, at *1. This court held that because the 1992 burglary statute "did not contain a dwelling element, the district court's person classification necessarily required judicial factfinding." 2016 WL 1391786, at *3. The court then held that classifying Olivas' "1992 burglary conviction as a person felony violates his constitutional rights as described in *Descamps* and *Apprendi* and as applied by the Kansas Supreme Court in *Dickey*." 2016 WL 1391786, at *3.

While the State argues that *Dickey* was incorrectly decided, we simply do not have the authority to overrule our Supreme Court. See *Dees v. Marion-Florence U.S.D. 408*, 36 Kan. App. 2d 768, 782-83, 149 P.3d 1 (2006) (The Court of Appeals is duty bound to follow Kansas Supreme Court precedent.). Thus, Marsh's 1992 burglary conviction should not be classified as a person felony, absent legally justifiable reasons to do otherwise.

### 2. *Marsh's Admissions*

The State argues, based upon the evidence at the hearing and Marsh's alleged admissions, that Marsh admitted that in 1992 he committed a burglary of a dwelling. The State argues that if Marsh admitted to the burglary of a dwelling, there is no *Apprendi* violation, citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). In essence, the State argues there is an exception to *Apprendi*'s jury trial

8

requirement—that is when the defendant has admitted the facts necessary to enhance the defendant's sentence.

In *Blakely,* the Supreme Court stated: "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* " 542 U.S. at 303. In *Blakely*, the defendant was sentenced to more than 3 years beyond the statutory maximum sentence of 53 months because the state court found he acted with deliberate cruelty. However, the Court held the facts supporting the sentence were neither admitted by the defendant nor found by a jury. 542 U.S. at 303. In reversing the sentence, the Court stated that when a judge inflicts a punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority. 542 U.S. at 304.

The Court's decision in *Blakely* does not explain procedurally how a fact must be admitted by the defendant, other than a citation to *Apprendi,* 530 U.S. at 488. *Blakely*, 542 U.S. at 303. However, *Apprendi* does not discuss the meaning of "admitted" and merely references and discusses *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998):

> "Because Almendarez-Torres had *admitted* the three earlier convictions for aggravated felonies—all of which had been entered pursuant to proceedings with substantial procedural safeguards of their own—no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court." *Apprendi*, 530 U.S. at 488.

The "admission" referenced in *Apprendi* was an admission that Almendarez-Torres made during a plea hearing. *Almendarez-Torres*, 523 U.S. at 227. At the plea hearing, Almendarez-Torres admitted to the relevant elements of the statute under which he was being charged, *i.e*., that he had previously been deported, that he had reentered the

9

United States without permission and consent of the Attorney General, and that the earlier deportation had taken place pursuant to three earlier convictions for aggravated felonies. The facts admitted at the hearing were the facts necessary to find that he could be found guilty of the all the elements of the crime to which he was charged. See 523 U.S. at 227.

The Supreme Court in *Descamps* reinforced the purpose of what facts are important at a plea hearing if the government wants to use that conviction at a later hearing to enhance a different sentence.

In *Descamps*, the government sought to enhance Descamps' sentence under the Armed Career Criminal Act (ACCA) on the basis of Descamps' three prior convictions. One of Descamps's convictions was for burglary under § 459 of the California Penal Code. The § 459 definition of burglary went beyond the generic definition of burglary because it did not require a breaking and entering. The district court utilized the modified categorical approach to look at the plea colloquy and found that Descamps had admitted the elements of a generic burglary. Because of this, the district court permitted the ACCA sentence enhancement. The Ninth Circuit Court of Appeals affirmed, holding that where a sentencing court considers a conviction under a statute "that is 'categorically broader than the generic offense'" it may utilize the modified categorical approach to determine whether a plea was based on facts that would satisfy the elements of a generic crime. See 133 S. Ct. at 2283.

The Supreme Court reversed, stating: "a conviction based on a guilty plea can qualify as an ACCA predicate only if the defendant 'necessarily admitted [*the*] *elements of the generic offense.*'" (Emphasis added.) 133 S. Ct. at 2284 (quoting *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 161 L. Ed. 2d 205 [2005]). The Court stated that "the modified approach serves a limited function:  It helps effectuate the categorical analysis when a divisible statute, listing potential offenses in the alternative, renders

10

opaque which element played a part in the defendant's conviction." 133 S. Ct. at 2283. The modified categorical approach did not apply to Descamps' situation "[b]ecause generic unlawful entry is not an element, or an alternative element, of § 459, a conviction under that statute is never for generic burglary." 133 S. Ct. at 2293. The Court also stated "[w]hether Descamps *did* break and enter makes no difference. And likewise, *whether he ever admitted to breaking and entering is irrelevant. . . .* We know Descamps' crime of conviction, and it does not correspond to the relevant generic offense. Under our prior decisions, the inquiry is over." (Emphasis added.) 133 S. Ct. at 2286. As such, any fact finding that goes beyond determining whether the defendant's actions satisfied an element of the crime charged violates *Apprendi*. See 133 S. Ct. at 2281-87.

Our Supreme Court in *Dickey* adopted this holding regarding the use of the modified categorical approach, stating it applies, "when the statute forming the basis of the prior conviction is a 'divisible statute,' *i.e.*, a statute which includes multiple, alternative versions of the crime and at least one of the versions matches the elements of the generic offense." *Dickey,* 301 Kan. at 1037 (citing *Descamps*, 133 S. Ct. at 2281-82, 2284-86).

Importantly for our decision here, the Kansas Supreme Court held that a district court is constitutionally prohibited from classifying a prior burglary adjudication as a person felony when doing so would have necessarily resulted from the district court making or adopting a factual finding that went beyond simply identifying the statutory elements that constituted the prior burglary adjudication. *Dickey*, 301 Kan. at 1039. Thus, looking beyond the statute to determine whether Marsh's prior burglary conviction involved a dwelling would be constitutionally prohibited under *Descamps* and *Apprendi*. See *Dickey*, 301 Kan. at 1039.

In this case, it was permissible for the district court in 2014 to have a hearing on Marsh's objection to classifying the 1992 burglary conviction as a person felony.

11

However, the district court was constitutionally prohibited from making or adopting factual findings that went beyond simply identifying the statutory elements that constituted the 1992 burglary conviction.

This makes sense in the context of the right to jury trial. In Kansas, a burglary is classified as a person felony if the burglarized structure is a dwelling. Like the burglary statute in *Descamps*, the 1992 Kansas burglary statute "was comprised of multiple, alternative versions of the crime," but "none included an element requiring that the structure burglarized be a dwelling." *Dickey*, 301 Kan. at 1039. In 1992, a jury would not have needed to find Marsh committed the burglary of a dwelling because dwelling was not a statutory element of the crime of burglary in 1992. Similarly, the court in 1992 did not need to make factual findings at the plea hearing that Marsh committed the burglary of a dwelling. In 1992, the court only needed to find that there was a sufficient factual basis that met the elements of the crime of burglary in 1992.

*a. 1992 sentencing* .

At the 2014 sentencing, the district court went beyond merely considering the elements of the 1992 burglary conviction when the court considered the charging document, what Marsh said at the 1992 plea hearing, and what Marsh said at the PSI investigation. In doing this, the district court's actions constituted making and adopting findings of fact that went beyond simply identifying the statutory elements that constituted the prior burglary conviction.

Marsh could not admit to the burglary of a dwelling in 1992 because the crime of "burglary of a dwelling" did not exist in 1992 as distinct to the crime of burglary. Thus, *Apprendi* was implicated by the district court's actions at the 2014 sentencing.

12

Therefore, it was error for the district court in 2014 to consider the 1992 burglary charging document, what Marsh said at his 1992 plea hearing, and what Marsh said to the PSI preparers in determining whether to classify the 1992 burglary conviction as person felony.

*b. 1999 sentencing for an unrelated crime, possession of cocaine.*

As part of the court's decision to classify the 1992 burglary conviction, the district court also considered actions taken surrounding Marsh's sentencing hearings for his 1999 cocaine conviction. In particular, the State emphasized to the court that the PSI report for the 1999 possession of cocaine conviction scored the 1992 burglary conviction as a person felony. In addition, the State noted that for the 1999 sentencing, Marsh's attorney had filed a motion for departure in which Marsh's attorney acknowledged that Marsh had a previous conviction for" burglary of a dwelling" for purposes of the motion.

The court in *Dickey* addressed the issue of a defendant's failure to object to criminal history classification, stating:

> "But a stipulation or lack of an objection regarding how those convictions should be classified or counted as a matter of law for the purpose of determining the defendant's criminal history score will not prevent a subsequent challenge under K.S.A. 22-3504(1) of his or her prior convictions. [*State v. Weber,* 297 Kan. 805, 814-15, 304 P.3d 1262 (2013)]. Accordingly, to the extent that *Vandervort, Goeller,* and *McBride* stand for the proposition that a legal challenge under K.S.A. 22-3504(1) is waived if the defendant stipulated or failed to object at sentencing to the classification of prior convictions or the resulting criminal history score, those cases are specifically overruled." 301 Kan. at 1032.

K.S.A 22-3504(1) expressly states that the court may correct an illegal sentence "at any time." See *State v. Luarks*, 302 Kan. 972, 975, 360 P.3d 418 (2015); *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011); *State v. Martin*, 52 Kan. App. 2d 474, Syl. ¶ 5,

13

369 P.3d 959 (2016) ("Applying the doctrine of res judicata to bar challenges of an illegal sentence merely because they could have been brought in a direct appeal would undermine the clear statutory directive in K.S.A. 22-3504[1] that courts may correct an illegal sentence at any time."), *petition for rev. filed* May 5, 2016.

Therefore, a defendant's failure to object to a classification of his criminal history does not bar a subsequent objection to, or act as a stipulation to, the classification of convictions listed in the defendant's criminal history. Likewise, Marsh's counsel's statements made in the 1999 departure motion were unrelated to a challenge to Marsh's criminal history. Like statements made at a plea hearing, the statements made in a subsequent motion are not admissions for determining whether the defendant has given a sufficient factual basis at a hearing to determine if the defendant is guilty of the crime.

In doing this, the district court's actions constituted making and adopting findings of fact that went beyond simply identifying the statutory elements that constituted the prior burglary conviction. Thus, it was error for the district court to consider the fact that at the 1999 sentencing for possession of cocaine, Marsh did not object to the classification in the 1999 PSI and to consider Marsh's attorney's statements made in the motion for a departure sentence.

*c. Marsh's testimony at the 2014 sentencing.*

As part of the sentencing in the 2014 case, the district court conducted an evidentiary hearing to the bench to determine whether Marsh entered a dwelling in 1992 when Marsh committed the burglary. At that bench hearing, the court heard Marsh's testimonial evidence.

Procedurally, this is problematic. As we noted above, *Apprendi* is implicated "when a district court, for purposes of enhancing a defendant's sentence for a current

14

conviction, makes findings of fact at sentencing that go beyond merely finding the existence of a prior conviction or the statutory elements that made up the prior conviction." *Dickey*, 301 Kan. at 1036. The district court could not make a factual finding that went beyond simply identifying the statutory elements that constituted the prior burglary conviction. See 301 Kan. at 1039. This means, other than the fact of the prior conviction, the fact must be submitted to a jury and proved beyond a reasonable doubt. 301 Kan. at 1036.

Nothing in the record presented to us would demonstrate the court had a dialogue with Marsh about waiving his right to a jury trial. Nor does it demonstrate that either Marsh or the State requested a jury trial. In addition, it does not appear that the Kansas Legislature has adopted a jury trial procedure to use in this factual scenario. The legislature knows how pass legislation providing for the proper procedure when it recognizes that a right to jury trial is implicated. See K.S.A. 2015 Supp. 21-6620 (jury trial procedure for the enhancement of a sentence beyond the mandatory minimum upon conviction of first-degree murder). As a result, it was error for the court to conduct a testimonial evidentiary hearing.

In addition, in doing this, the district court's actions constituted the making and adopting of findings of fact that went beyond simply identifying the statutory elements that constituted the prior burglary conviction.

As part of this conclusion, we note that Marsh's testimony at the 2014 hearing was contradictory. He said he "never entered the house." However, on cross-examination, when the State asked whether Marsh admitted that he went in the house in the 1992 PSI Marsh said, "I admit to goin' inside the home." But then Marsh said, "that ain't what happened."

15

*3. Harmless Error*

The State's final argument is that even if there was an *Apprendi* error, it is harmless error due to Marsh's multiple admissions. The constitutional harmless error analysis applies to violations of a right guaranteed by the United States Constitution. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011). This standard requires the prosecution to prove "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." 292 Kan. at 569.

In support, the State cites four items as evidence that the defendant admitted the fact that the burglary was of a dwelling. The issue is not whether in 2014 the State proved to a judge beyond a reasonable doubt that Marsh committed burglary of a dwelling in 1992. The issue is whether that finding of fact is one that only a jury in 1992 could and would need to make.

The district court's actions in conducting the hearing and considering the evidence were legally impermissible. The district court erred because the evidence was admitted for the purpose of the making and adopting findings of fact that went beyond simply identifying the statutory elements that constituted the prior burglary conviction. Thus, the district court's actions were not harmless error.

In conclusion, the district court erred by classifying Marsh's 1992 burglary as a person felony in violation of his Sixth Amendment rights as defined by *Apprendi*, *Descamps*, and *Dickey*. In doing this, the district court's actions constituted making and adopting findings of fact that went beyond simply identifying the statutory elements that constituted the prior burglary conviction.

While reasonable minds could differ on the question of whether it was our Supreme Court's intention in *Dickey* to prohibit the type of judicial factfinding the district court conducted at Marsh's 2014 sentencing hearing, the language used by the court in *Dickey* says what it says. If true, this error was not harmless.

*Did the district court properly classify Marsh's 1991 attempted aggravated assault conviction as a person felony?*

Marsh also argues, for the first time, that the district court improperly classified his 1991 attempted aggravated assault as a person felony. The State did not address this issue in its brief.

Marsh's failure to raise this argument in district court does not preclude him from raising the issue in this appeal. See *State v. Kelly*, 298 Kan. 965, 975-76, 318 P.3d 987 (2014) (A court may review an illegal sentence allegation for the first time on appeal.). A court may correct an illegal sentence at any time. K.S.A. 22-3504(1).

Whether a prior conviction or adjudication is properly classified as a person or nonperson offense involves the interpretation of statutes, that is, the revised Kansas Sentencing Guidelines (KSGA) found at K.S.A. 2015 Supp. 21-6801 *et seq*. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

At the time of Marsh's 1991 attempted aggravated assault conviction, aggravated assault was defined as: "(a) Unlawfully assaulting or striking at another with a deadly weapon; or (b) Committing assault by threatening or menacing another while disguised in any manner designed to conceal identity; or (c) Willfully and intentionally assaulting another with intent to commit any felony." K.S.A. 21-3410 (Ensley 1988). Assault was defined as: "an intentional threat or attempt to do bodily harm to another coupled with

17

apparent ability and resulting in immediate apprehension of bodily harm." K.S.A. 21-3408 (Ensley 1988).

When Marsh was sentenced in 2014 for his current offense, aggravated assault was defined as an "assault . . . committed: (1) With a deadly weapon; (2) while disguised in any manner designed to conceal identity; or (3) with intent to commit any felony." K.S.A. 2014 Supp. 21-5412(b). "Assault" is defined as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2014 Supp. 21-5412(a). Assault is a person misdemeanor. K.S.A. 2014 Supp. 21-5412(e)(1). Aggravated assault is a person felony. K.S.A. 2014 Supp. 21-5412(e)(2).

Marsh argues that unlike subsections (b) and (c) of the 1991 aggravated assault statute, subsection (a) of the current statute does not require an offender to commit simple assault. Marsh argues that an offender could be convicted under subsection (a) of the current statute by either by assaulting another with a deadly weapon or by striking at another with a deadly weapon. He further argues under the first means, simple assault with a deadly weapon, immediate apprehension of bodily harm must exist, but under the second means, striking at another with a deadly weapon, the victim need not feel any apprehension of bodily harm at all. Finally, Marsh argues, under the modern statute, an assault must occur. He concludes that the 1991 assault statute is broader than the current statute.

Marsh's argument misses the point. Under each subsection of the 1991 aggravated assault statute, the perpetrator must still have committed an assault, which required the immediate apprehension of bodily harm. The issue is not whether an assault under the current statute would qualify as an assault under the 1988 statute. The issue is whether all of the elements of an assault under the 1988 statute would qualify as an assault under the 2014 statute.

18

This court recently examined K.S.A. 21-3410(a)(Ensley 1988) in *State v. Greenleaf,* No. 111,277, 2015 WL 1782682, at *2 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1080 (2015). There, the court stated that "it is clear that aggravated assault should be categorized as a person crime because it is a crime in which a defendant assaults or strikes at *another person*." The court added:

"In 1969, when the Kansas Criminal Code was adopted, the legislature set out a very specific statutory outline. See L.1969, [c]h. 180. Crimes listed under Article 34 of the Code were designated as 'Crimes Against Persons.' K.S.A. 21-3410 (Ensley 1988), aggravated assault, was listed under Article 34. Accordingly, the legislature's intent was clear. Aggravated assault was designated as a person crime. That designation has remained since that time and was simply further codified with the adoption of the KSGA in 1993. See K.S.A. 21-3410 (aggravated assault is severity level 7 person felony). Accordingly, in the case of aggravated assault under K.S.A. 21-3410, it is clear that the legislature has always intended it to be classified as a person crime." 2015 WL 1782682, at *2.

We agree and adopt this reasoning that a 1991 conviction for aggravated assault should be classified as a person felony. Any action, whether it is assault or striking at, taken against another with a deadly weapon is a person crime.

In addition, it is clear that assault as defined in 1991 meets the definitional requirements to be classified as an assault in 2014. Even if Marsh's arguments were true that the elements of an aggravated assault in 2014 might be broader than in 1991, an aggravated assault committed in 1991 would still qualify as an aggravated assault under K.S.A. 2014 Supp. 21-5412(b) because the elements of assault have not materially changed. "Striking at another with a deadly weapon" today would be an assault, as defined today, with a deadly weapon.

19

Finally, in applying this holding to Marsh's 1991 conviction for attempted aggravated assault, K.S.A. 2014 Supp. 21-6811(g) provides that attempted crimes should be "treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime." In 1991, the definition of "attempt" was "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-3301(a) (Ensley 1988). The definition of "attempt" has not changed. See K.S.A. 2014 Supp. 21-5301(a). Therefore, if a 1991 aggravated assault would be properly classified as a person crime, then a 1991 attempted aggravated assault would also be properly classified as a person crime.

In conclusion, the district court properly classified Marsh's 1991 attempted aggravated assault as a person crime. However, we reverse the district court's decision that Marsh's 1992 burglary conviction should be classified as a person felony. We affirm the district court's decision that Marsh's 1991 attempted aggravated assault should be classified as a person felony. We remand for the district court to order the preparation of an amended PSI and to hold a new sentencing hearing.

Affirmed in part, reversed in part, and remanded with directions.

20